IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 5, 2026

## JAMES WILLIAM ROSE ET AL. v. PATRICK M. MALONE

**Appeal from the Chancery Court for Williamson County**
**No. 19CV-48249          Michael Binkley, Judge**

_____

### No. M2023-01239-COA-R3-CV

_____

In this grandparent visitation action, the grandparents filed a contempt petition, alleging that the child's father had violated provisions of a previously entered visitation order. At the conclusion of the hearing, the trial court rendered an oral ruling and found the father in contempt. Before the trial court's entry of a written order regarding contempt, however, the father filed a motion seeking the trial court judge's recusal. The trial court entered orders adjudicating the contempt charges and the father's bond before entering a written order adjudicating the recusal issue. The trial court then entered orders awarding attorney's fees to the grandparents. The father has appealed. Upon review, we determine that the trial court erred by entering further orders before entering an order adjudicating the recusal motion. We therefore vacate the trial court's August 2023 bond orders and the August 2023 order regarding the second contempt petition, which were entered while the motion to recuse was pending. We reverse the trial court's orders awarding attorney's fees to the grandparents. We remand this matter to the trial court for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and VALERIE L. SMITH, JJ., joined.

Daniel A. Horwitz and Sarah L. Martin, Nashville, Tennessee, for the appellant, Patrick M. Malone.

Ashley N. Goins, Rebecca McKelvey Castañeda, and Mary Elizabeth King, Nashville, Tennessee, for the appellees, James William Rose and Jennie Adams Rose.

**OPINION**

### I. Factual and Procedural Background

This is the third appeal in this grandparent visitation action. The early history of this litigation is detailed in this Court's opinion from the first appeal, *Rose v. Malone*, No. M2021-00569-COA-R3-CV, 2022 WL 2914644, at *1-2 (Tenn. Ct. App. July 25, 2022) ("*Rose I*"):

> This is a dispute between a child's father, Patrick M. Malone ("Father"), and the maternal grandparents of the child, James W. Rose and Jennie A. Rose ("Grandfather" and "Grandmother," or collectively, "Grandparents"). Father and Katherine R. Malone ("Mother") were married in 2008. Their only child, B.R.M., was born in 2012. In 2015, Mother filed for a divorce, which resulted in the entry of a final decree of divorce in May 2017. Mother was named primary residential parent and awarded 319 days of parenting time per year, with Father having 46 days. Tragically, Mother was killed in an accident just three months later. Her death was an emotional time for all involved and gave rise to some uncertainty about the child's situation because of Father's work. Father had started a new job requiring him to travel to Texas and Mexico for weeks at a time, and he was unsure how he would manage going forward. After Mother's memorial service, it was suggested that the child live with the maternal uncle and aunt for a time, but Father was adamant that this would not happen. After the parties discussed the situation, there was no question about Father's intention to return to Nashville and care for the child; the only question was what he needed to do to make that happen. Father was prepared to take the child at this point, but he allowed the child to remain in Grandparents' care for approximately three weeks because he did not want to be insensitive to what they were going through.
>
> Following Mother's death, her estate was probated. Much of the animosity between the parties in this case stems from these probate court proceedings. According to Grandparents, at the first hearing, they requested that the judge consider a trust or guardian ad litem to represent the child because of concerns about Father's financial responsibility. Grandparents wished to establish and preserve a "nest egg" for the child. They believed this was in the child's best interests and claimed that they did not intend to hurt or interfere with Father's ability to parent the child. Conversely, Father claimed that he was the one who first requested a trust be established and that Grandfather opposed him being named a co-trustee. Ultimately, in June 2018, a trust was established, Father was named a co-trustee, and Grandparents were named trust protectors. Grandparents believed that

Father took umbrage at their actions to establish the trust and did not appreciate that they were named as trust protectors. Father admittedly believed that Grandparents had the child's best interests in mind, but he took issue with the fact that the proceedings made his life more difficult. According to Father, he eventually agreed to Grandparents being named trust protectors because he just needed the proceedings to be over and was stressed about paying for the child's private school tuition.

After the trust was established in June 2018, Father began opposing contact between Grandparents and the child. He informed Grandparents that the child would not be able to visit them for a July 4th parade, but, according to Grandparents, he did not seem to give a reason why. After some correspondence between the parties, he relented and allowed the child to visit that summer with Grandparents at their cabin in Washington. He determined it would be a positive experience for the child to visit because she would have the opportunity to meet her newborn maternal cousin, who was named after Mother. In November 2018, the child visited with Grandparents again, but it would be the last time they would see or talk to her until July 2019. The parties continued to correspond; however, their conflict escalated.

Beginning in November 2018, Father ignored or denied numerous requests by Grandparents to have contact with the child. He denied or ignored their requests for time during Thanksgiving, Christmas, and New Year's Eve. He also denied or ignored several of their requests to FaceTime the child. Nevertheless, Grandparents continued to make requests hoping to repair their relationship in order to see the child. After five months of no contact with the child, Grandparents were unable to engage in any dialogue with Father indicating a change in the situation. Therefore, Grandparents filed a petition for grandparent visitation in April 2019. In their petition, Grandparents stated that the last time they had seen or talked to the child was in November 2018. Before that point, they explained, they saw the child frequently, and they described their relationship with the child as "wonderful." Father filed an answer to the petition in May 2019, requesting that the petition be dismissed. The parties later participated in mediation, but were unable to resolve their differences. As such, the case ultimately went to trial in October 2020.

During the three-day trial, Grandparents, Father, and the paternal grandfather provided testimony. Grandparents had good things to say about Father and maintained that he was a good parent to the child. However, they claimed that their relationship went awry due to the probate court proceedings, and they filed the petition believing it was the only way they would get to see the child. They were hopeful that the parties could repair

their relationship after this case concluded, but they ultimately believed that the child would be harmed if visitation was not ordered by the court. Father testified that it was not his intent to deny the child's relationship with Grandparents, but he admitted to denying Grandparents' requests for contact with the child from November 2018 until July 2019. He also had good things to say about Grandparents, but he took issue with their actions in the probate court proceedings. The paternal grandfather believed that Grandparents loved the child and that the child loved them, but he did not believe any harm had come to her from the situation with visitation in the past two years.

The trial court found each witness to be credible and stated that each testified sincerely, honestly, and directly. In February 2021, the trial court entered a memorandum and order granting the petition for grandparent visitation. The trial court found the following: Father expressly and actually opposed grandparents' visitation from June 2018 until April 2019; Tennessee Code Annotated 36-6-306(a)(1) applied because Mother was deceased; there was a clear danger of substantial harm to the child if visitation with Grandparents continued to be denied; and reasonable and regularly-scheduled visitation with Grandparents was in the child's best interests. Following the entry of trial court's order, Grandparents filed a motion for attorney's fees and costs. The trial court entered an order granting in part and denying in part the motion. Thereafter, Father timely filed an appeal.

(Footnotes omitted.) On appeal, the *Rose I* Court affirmed the trial court's grant of visitation to the maternal grandparents, James Williams Rose and Jennie Adams Rose ("collectively, Grandparents"). *Id.* at *14.

The second appeal in this matter involved an initial petition for contempt that Grandparents had filed against Patrick M. Malone ("Father") on February 2, 2022. *See Rose v. Malone*, No. M2022-01261-COA-R3-CV, 2025 WL 657732, at *2 (Tenn. Ct. App. Feb. 27, 2025) ("*Rose II*"). Following a hearing on that petition conducted on August 4, 2022, the trial court found Father guilty of twenty-three counts of criminal contempt and sentenced Father to 230 days in jail with 140 of those days suspended pending Father's ongoing compliance with court orders. *Id.* On appeal in *Rose II*, this Court affirmed eleven of the contempt counts and reversed twelve of the contempt counts, vacating the prior sentence and remanding for resentencing. *Id.* at *28.

Meanwhile, on August 5, 2022, Grandparents filed a second petition alleging acts of criminal contempt by Father. Grandparents asserted eight counts of contempt related to Father's alleged failures to (1) allow them to exercise their summer visitation with the Child, (2) apprise them of the Child's extracurricular activities, and (3) facilitate Grandparents' weekly FaceTime calls with the Child. Grandparents asked the trial court

to impose a sentence of ten days' incarceration for each count. Grandparents also sought an award of attorney's fees.

Grandparents' petition was set for hearing on August 25, 2022, but Father failed to appear despite previously having been ordered to do so by the trial court. The court therefore entered an order for bodily attachment for Father, ordering him to appear in court on October 6, 2022. Father filed a motion to dismiss on October 5, 2022, asserting that the trial court no longer had personal jurisdiction over him or the Child because they had relocated to Missouri in 2019. Father claimed that he had not appeared in court on the previous hearing date because he did not wish to waive the jurisdictional defect. In support, Father attached a copy of a motion that he had filed with the Jackson County Circuit Court in Missouri ("Missouri trial court"), asking that court to assume jurisdiction over this matter pursuant to the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Father also filed a notice of limited appearance with the Tennessee trial court.

The trial court entered a second order for bodily attachment on November 1, 2022. In this order, the court found that Father and his counsel had appeared in court on October 6, 2022, and the court had determined that Father's motion to dismiss was not properly scheduled for hearing on that date although the court had "noted that [the court] had previously ruled on, and rejected, [Father's] jurisdictional challenges." The court stated that it had allowed counsel the opportunity to discuss the matter before the case was recalled during the afternoon docket but that Father had left before the case was recalled. The court found that Father had "absconded when faced with the possibility of having to enter a plea related to the current contempt proceedings," and the court ordered Father to appear on November 3, 2022.

On December 2, 2022, the trial court entered a third order of bodily attachment, requiring Father to appear in court on January 26, 2023. In support, the court found that Father had failed to appear in court on November 3, 2022, despite its prior order directing him to do so. The court noted that Father had "exhibited a history of disregarding this Court's Orders." On December 9, 2022, Father's counsel filed a motion to withdraw, stating that the trial court, in conjunction with the judge from the Missouri trial court, had conducted a hearing via Zoom on that date regarding the UCCJEA jurisdictional issue. Father's counsel thus articulated that the limited scope of his representation had been satisfied.

On January 18, 2023, Father filed a memorandum in support of his motion to dismiss, claiming that the trial court lacked both personal and subject matter jurisdiction. Father asserted that the court lacked personal jurisdiction because he and the Child had relocated to Missouri in 2019 and because the original grandparent visitation action had been adjudicated in 2019. Father propounded that he lacked minimum contacts with Tennessee and that he had not waived the personal jurisdiction issue. Father therefore

asserted that the contempt petitions constituted "new proceedings," requiring him to be properly served with process, which Father alleged had not occurred. Father further asserted that the trial court lacked subject matter jurisdiction because Father had filed a modification petition in the Missouri trial court, which court had determined that it would maintain jurisdiction over such modification but that the Tennessee trial court would maintain jurisdiction regarding enforcement of its judgment. Father acknowledged that the Missouri trial court had stayed the modification issue and declined to exercise jurisdiction until the trial court resolved the contempt issues.

Grandparents filed a response to Father's motion to dismiss, arguing that the trial court's jurisdiction had already been established but that Father had refused to accept the result. Grandparents attached (1) a copy of the trial court's July 15, 2022 memorandum and order, wherein the court found that it had continuing jurisdiction pursuant to the UCCJEA, and (2) a copy of an order from the Missouri trial court, wherein that court declined to exercise jurisdiction over Father's modification petition until the Tennessee contempt charges had been resolved. The trial court entered an order stating that it would exercise continuing jurisdiction over the action on January 27, 2023.

On February 24, 2023, the trial court entered a fourth order for bodily attachment, stating that the court had conducted a hearing on January 26, 2023, and that Father had not appeared despite previously having been ordered to do so. The trial court found Father's actions "deplorable" and stated that Father had been "gaming the legal system to his advantage." The court thus ordered Father to appear on March 9, 2023. On March 22, 2023, the trial court entered an order from the March 9 hearing, stating that Father had appeared for the hearing and had been taken into custody by reason of the numerous orders for bodily attachment entered by the court. The court also reported that Father had pled "not guilty" to eight counts of criminal contempt and that trial on the contempt charges had been set for May 17, 2023. Meanwhile, on March 16, 2023, the trial court entered an order denying Father's motion to dismiss.

On May 17, 2023, the trial court conducted a bench trial concerning the second contempt petition. Grandparents testified, but Father refrained from testifying. At the conclusion of the hearing, the trial court made oral findings of fact, determining that Father was guilty of twelve counts of criminal contempt beyond a reasonable doubt. Although the court rendered lengthy oral findings, the court also invited counsel to file proposed findings of fact in order to "fill in" specific facts in the written order. Furthermore, the court issued a mittimus that day detailing that Father had been found guilty of twelve counts of contempt and had been sentenced to 260 days in jail (120 days for the twelve counts plus 140 days from the prior sentence that had been suspended). Consequently, Father was taken into custody at the end of the hearing. Father subsequently filed a motion to set bail pending appeal, which Grandparents opposed. A bail hearing was conducted on June 22, 2023. On July 6, 2023, the trial court entered an order setting Father's bond at $50,000

upon the condition that Father would strictly comply with the visitation and FaceTime schedule.

On August 7, 2023, Father filed a motion seeking recusal of the trial court judge ("the Chancellor"). Father asserted that his bail bondsperson, Judy Cunningham, had informed him that she had been directly contacted by the Chancellor, who had allegedly attempted to influence her to revoke Father's bond. Although Father acknowledged that he had been aware of this information for some time, he claimed that he had only recently been able to verify the information by obtaining Ms. Cunningham's incoming telephone call log. Father asserted that this interaction demonstrated the trial court's bias against him, warranting recusal. Father attached Ms. Cunningham's affidavit, wherein she stated that the Chancellor had called her on August 25, 2022, and had told her that Father had missed court on that date and that Ms. Cunningham needed more information about Father because he "doesn't do what he says he will do." Ms. Cunningham stated that she could identify the Chancellor "by his voice" and that she had interpreted this phone call as an attempt to convince her to revoke Father's bond. Ms. Cunningham's purported incoming call log was attached, which evinces a call received on that date from a particular phone number.

On August 15, 2023, the trial court entered an order from the June 2023 hearing denying bond to Father and finding that Father had repeatedly defied clear and unambiguous court orders. The court further found that Father and his family had been providing information to the Child regarding the court proceedings even though she was "not of sufficient age and maturity to understand." The trial court also ordered that neither Father nor the paternal grandfather would speak to the Child about the legal proceedings. Two days later, the trial court re-entered the same order, with a footnote explaining that because this Court had entered an order requiring that bond be set, the trial court had conducted the June 22, 2023 hearing regarding bond and had set it at $50,000. The court stated that the August 17 order had been placed in the record for completeness and to memorialize the trial court's directive that Father and the paternal grandfather would not speak to the Child about the proceedings.

On August 29, 2023, the trial court entered an order with respect to the hearing conducted on May 17, 2023, concerning the second contempt petition. The court noted that it had heard testimony from Grandparents but that Father had exercised his right not to testify. The trial court made extensive factual findings and determined that Father was guilty of twelve counts of criminal contempt, including the eight counts asserted by Grandparents in their petition and four counts of contempt for failing to appear in court as ordered. Father appealed the trial court's order the following day. Grandparents subsequently filed motions seeking awards of attorney's fees.

On September 13, 2023, the trial court entered an order regarding Father's motion to recuse. The Chancellor stated that he had never called Ms. Cunningham, did not know her, and had never spoken to her. The Chancellor explained that the phone number shown

on Ms. Cunningham's call log was the number for the court clerk's office and not the Chancellor's office phone number. The Chancellor indicated that he only used the dedicated phone lines in his office when placing outgoing calls. He therefore denied the motion to recuse, finding the allegations contained therein to be false.

On November 11, 2023, the trial court entered an order granting Grandparents' request for attorney's fees without determining the specific amount of fees awarded. Both Grandparents and Father filed motions to alter or amend this order concerning the amount and the propriety of the fee award. Following the Chancellor's retirement in 2023, on February 20, 2024, Chancellor Erin Nations recused herself from this matter, and the case was reassigned to Chancellor Deana Hood. On July 5, 2024, Chancellor Hood entered an order stating that the propriety of an attorney's fee award would not be reconsidered at the trial court level, but the trial court set a hearing to determine the proper amount of the fee award. Following that hearing, on October 25, 2024, the trial court entered an order setting Grandparents' attorney's fee award at $67,206.25 for the first contempt petition and $93,357.50 for the second contempt petition.

## II. Issues Presented

Father raises the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by entering its contempt order while Father's motion to recuse was pending.

2. Whether the trial court erred by entering its contempt order in violation of *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014).

3. Whether the trial court erred by denying Father's motion to recuse.

4. Whether the trial court erred by entering its prior restraint orders.

5. Whether the trial court erred by finding Father in contempt for counts one through eight.

6. Whether the trial court erred by sentencing Father consecutively and to maximum terms of actual incarceration for each count.

7. Whether the trial court's attorney's fee order should be reversed or vacated.

## III. Standard of Review

We review a trial court's factual findings in a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). To the extent that the trial court's determinations rest upon an assessment of the credibility of witnesses, the determinations will not be overturned absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

This Court reviews the denial of a motion for recusal under a *de novo* standard of review. Tenn. Sup. Ct. R. 10B, § 2.01. As our Supreme Court has explained:

> "[T]he test for recusal is an objective one because the appearance of bias is just as injurious to the integrity of the courts as actual bias." State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008) (citing Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001)). Thus, the test for recusal requires a judge to disqualify himself or herself in any proceeding in which "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. (quoting Davis at 564); see also Clinard v. Blackwood, 46 S.W.3d 177, 187 (Tenn. 2001) ("[B]ecause judges have a privileged understanding of the legal system, they may fail to find an appearance of impropriety where one would be found by a layperson.").

*State v. Griffin*, 610 S.W.3d 752, 758 (Tenn. 2020).

## IV. Orders Entered During Pendency of Motion to Recuse

As a threshold issue, Father advances the position that the trial court's August 29, 2023 order, wherein the court found Father guilty of twelve counts of criminal contempt, should be vacated because Father had previously filed a motion to recuse, which the trial court had not adjudicated before entering the contempt order. Father asserts that the trial court erred by failing to immediately enter a written order regarding recusal. In support, Father relies on the provisions of Tennessee Supreme Court Rule 10B, which state in pertinent part:

> 1.02. While the motion [to recuse] is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken.

1.03. Upon the filing of a motion pursuant to section 1.01, the judge shall act promptly by written order and either grant or deny the motion. If the motion is denied, the judge shall state in writing the grounds upon which he or she denies the motion. Notwithstanding the foregoing, if a subsequent section 1.01 motion is filed in the same case but fails to state, with specificity, substantially different factual and legal grounds than those relied upon in support of a previous section 1.01 motion, the judge may act summarily by filing a written order denying the motion as repetitive. The judge need not require a response to the motion, conduct a hearing on it, or provide any other written explanation for denying the motion.

As this Court has previously recognized, the purpose behind § 1.02 of Rule 10B is to provide a quick resolution to the recusal issue so that parties can make an informed decision regarding how to proceed in the litigation. *See, e.g.*, *Carney v. Santander Consumer USA*, No. M2010-01401-COA-R3-CV, 2015 WL 3407256, at *7 (Tenn. Ct. App. May 28, 2015) (determining that the trial court's failure to rule on the recusal issue until after it ruled on a procedural issue had placed the movant "in the difficult position of either waiting for the trial court to rule on the recusal motion, or moving forward with an effort to comply with the trial court's . . . order" and that § 1.02's purpose was "clearly to avoid exactly this type of issue").

Father posits that because the requirements of Rule 10B are mandatory, *see Prewitt v. Brown*, No. M2017-01420-COA-R3-CV, 2018 WL 2025212, at *8 (Tenn. Ct. App. Apr. 30, 2018), the trial court should not have entered any further orders before ruling on the recusal issue. *See Rodgers v. Sallee*, No. E2013-02067-COA-R3-CV, 2015 WL 636740, at *4 (Tenn. Ct. App. Feb. 13, 2015) ("Upon the filing of the motion for recusal, pursuant to the clear and mandatory language of Section 1.02 of Tennessee Supreme Court Rule 10B, the trial court should have 'ma[d]e no further orders and take[n] no further action on the case' until the recusal issue was addressed." (quoting Tenn. Sup. Ct. R. 10B, § 1.02)).

We recognize that numerous decisions issued by both this Court and the Court of Criminal Appeals support Father's assertion on this point. *See Tepe v. Blair*, No. E2025-02002-COA-T10B-CV, 2026 WL 92299, at *5 (Tenn. Ct. App. Jan. 13, 2026) (vacating the trial court's interim orders regarding substantive issues that were entered during the period after the recusal motion had been filed but before it had been adjudicated); *Matter of Conservatorship of Tapp*, No. W2021-00718-COA-R3-CV, 2023 WL 1957540, at *3-4 (Tenn. Ct. App. Feb. 13, 2023) (vacating the trial court's dismissal order that was entered before a written order regarding recusal even though the court had orally denied the recusal motion); *Adams v. Dunavant*, No. W2022-01747-COA-T10B-CV, 2023 WL 1769356, at *4 (Tenn. Ct. App. Feb. 3, 2023) (vacating the trial court's orders regarding substantive issues that were entered after the recusal motion was filed because the recusal motion had

not been adjudicated by the trial court); *Clay Cnty. v. Purdue Pharma L.P.*, No. E2022-00349-COA-T10B-CV, 2022 WL 1161056, at *4 (Tenn. Ct. App. Apr. 20, 2022) (vacating an order assessing sanctions that was entered after a recusal motion was filed but before entry of an order adjudicating recusal motion); *Carney*, 2015 WL 3407256, at *7 (vacating an order entered after recusal motion was filed but before recusal was adjudicated); *Rodgers*, 2015 WL 636740, at *5 (vacating two orders entered after recusal motion was filed but before recusal motion was adjudicated). *See also Tucker v. State*, No. M2018-01196-CCA-R3-ECN, 2019 WL 3782166, at *2 (Tenn. Crim. App. Aug. 12, 2019) (vacating an order entered after recusal motion was filed but before recusal was adjudicated); *State v. Coleman*, No. M2017-00264-CCA-R3-CD, 2018 WL 1684365, at *9 (Tenn. Crim. App. Nov. 14, 2017) ("When a trial court ignores a pending motion to recuse and enters further orders in a case without making a finding of good cause as dictated by Rule 10B section 1.02, the orders entered during the pendency of the motion to recuse may be vacated on appeal."). *But see In re Conservatorship of Tate*, No. M2012-01918-COA-10B-CV, 2012 WL 4086159, at *3 (Tenn. Ct. App. Sept. 17, 2012) (declining to require vacatur of a substantive ruling after the filing of a motion to recuse when the trial court heard the motion to recuse and substantive motion on the same date and issued oral rulings as to both but subsequently entered a written order on the substantive issue before entering a written order adjudicating the recusal motion).

Grandparents urge that the trial court was justified in entering the written contempt order while the motion to recuse was pending because the court had previously rendered an oral ruling on the contempt petition such that entry of the written order was merely an "administrative" action that did not violate Rule 10B, § 1.02. Grandparents' postulate is also not without support. *See Adkins v. Adkins*, No. M2021-00384-COA-T10B-CV, 2021 WL 2882491, at *8 (Tenn. Ct. App. July 9, 2021) (determining that because the trial court had made an oral ruling on a substantive issue prior to the recusal motion's filing, the court's act of entering a written order memorializing that prior ruling before entering an order regarding recusal "was purely administrative and did not violate section 1.02 of Tennessee Supreme Court Rule 10B."); *Guo v. Rogers*, No. M2020-01321-COA-T10B-CV, 2020 WL 6781244, at *4 (Tenn. Ct. App. Nov. 18, 2020) (same ruling as *Adkins*, explaining that "[t]he purpose of section 1.02 is to ensure that a trial court makes no substantive decisions while the motion to recuse is pending" and distinguishing a substantive ruling from an "administrative" one).

We acknowledge that a split of authority exists regarding whether a trial court violates § 1.02 of Rule 10B when it enters a written order on a separate issue before ruling on a pending motion to recuse after having issued an oral ruling on that separate issue before the recusal motion's filing. For example, in *Rodgers v. Sallee*, 2015 WL 636740, at *4, the trial court had issued an oral ruling on a motion to set aside a default judgment, and one party subsequently filed a motion seeking recusal. The trial court then entered two written orders, one of which memorialized its prior ruling regarding the motion to set aside,

- 11 -

before entering a written order adjudicating the recusal motion. *Id.* On appeal, the *Rodgers* Court vacated the two interim orders, stating in pertinent part:

> [T]he trial court issued an oral ruling regarding the motion seeking to set aside the default judgment before the motion to recuse was filed, but no written order was entered at that time. Before the respective written order was entered, Ms. Sallee filed a motion seeking the trial judge's recusal. Upon the filing of the motion for recusal, pursuant to the clear and mandatory language of Section 1.02 of Tennessee Supreme Court Rule 10B, the trial court should have "ma[d]e no further orders and take[n] no further action on the case" until the recusal issue was addressed. Notwithstanding the fact that a motion seeking recusal was pending, the trial court proceeded to subsequently enter two written orders regarding separate matters in the case before ruling on the issue of recusal. . . . Neither the January 24 order nor the February 19 order mention the pending recusal motion, and neither order states good cause for the action taken in accordance with Section 1.02 of Tennessee Supreme Court Rule 10B.
>
> * * *
>
> Pursuant to the plain language of Section 1.02 of Tennessee Supreme Court Rule 10B . . . we determine that the trial court's order denying Ms. Sallee's motion seeking to set aside the default judgment and the subsequent order dismissing the motions for sanctions must be vacated. We remand for further hearing regarding whether the default judgment should be set aside.

*Id.* at *4-5. Regarding the trial court's having previously issued an oral ruling on the motion to set aside, the *Rodgers* Court noted that "a trial court speaks through its written orders, and the appellate courts review only the trial court's written orders." *Id.* at *5, n.1 (citing *Conservatorship of Alexander v. JB Partners,* 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011)).

However, in *Adkins*, 2021 WL 2882491, at *8, and *Guo*, 2020 WL 6781244, at *4, a different panel of this Court reached the opposite result regarding trial courts that had memorialized prior oral rulings in written orders after the filing but before adjudication of motions to recuse. In those opinions, this Court found that the act of entering a written order memorializing a prior oral ruling before entering a written order adjudicating the recusal issue "was purely administrative and did not violate section 1.02 of Tennessee Supreme Court Rule 10B." *Adkins*, 2021 WL 2882491, at *8; *Guo*, 2020 WL 6781244, at *4 (finding that a substantive ruling was different than an "administrative" one). Respectfully, we do not construe Rule 10B as recognizing such a distinction.

- 12 -

Our Supreme Court has clarified that when construing rules, we are to "apply the natural and ordinary meaning of the language as it is used in the context and construe together all sections of the rule in light of its general purpose and plan." *State v. Crowe*, 168 S.W.3d 731, 744 (Tenn. 2005). We reiterate that Rule 10B, § 1.02 provides that "the judge whose disqualification is sought <u>shall</u> make <u>no</u> further orders and take <u>no</u> further action on the case, <u>except</u> for good cause stated in the order in which such action is taken" "[w]hile the motion [to recuse] is pending" (emphasis added). The plain language of § 1.02 draws no distinction between "substantive" orders and "administrative" orders; instead, the language clearly directs that "no further orders" shall be made and "no further action" shall be taken while the motion to recuse is pending. Moreover, "when the word 'shall' is used in a statute it is construed to be mandatory, not discretionary." *Home Builders Ass'n of Middle Tenn. v. Williamson Cnty.*, 304 S.W.3d 812, 819 (Tenn. 2010).

Rule 10B, § 1.02 does, however, contain an exception providing that a judge may make an order while the motion to recuse is pending "for good cause stated in the order." Accordingly, applying the natural and ordinary meaning of the rule's language, in context, and construing together all sections of the rule, we determine that an order stating good cause for its entry is the sole exception to the mandatory directive that no further orders shall be made while a recusal motion is pending. As such, we conclude that § 1.02 does not provide an exception for entry of "administrative" orders.

We further note that both cases relied upon by Grandparents, *Adkins*, 2021 WL 2882491, at *8, and *Guo*, 2020 WL 6781244, at *4, cite *In re Estate of Abbott*, No. W2017-02086-COA-T10B-CV, 2017 WL 4864816, at *2 (Tenn. Ct. App. Oct. 27, 2017), for the postulate that the "purpose of section 1.02 is to ensure that a trial court makes no substantive decisions while the motion to recuse is pending." In quoting this language from *Estate of Abbott*, the *Adkins* and *Guo* Courts appear to infer that a distinction exists between a substantive decision and administrative entry of an order. However, our review of *Estate of Abbott* leads to a different conclusion.

In *Estate of Abbott*, the trial court entered an order in a probate matter requiring the executor of a will to post a bond despite language in the will purporting to relieve her of that requirement. 2017 WL 4864816, at *1. The executor then filed a recusal motion pursuant to Rule 10B. *Id.* At the hearing on the motion, the trial court determined that the will was improperly witnessed and that probate should be rescinded. *Id.* The trial court thus concluded that the recusal motion was "moot." *Id.* On appeal, after addressing the substance of the recusal motion, this Court stated:

> While the trial court's disqualification was unnecessary, we cannot agree that the motion to disqualify was moot. Tennessee Supreme Court Rule 10B, Section 1.02 provides that while the motion to disqualify "is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in

- 13 -

the order in which such action is taken." The record in this case indicates that the motion to disqualify was originally the sole purpose of the October 2017 hearing. However, disqualification and the validity of the will were quickly conflated both by Appellant's counsel and the trial court. However, Rule 10B, Section 1.02 requires the trial court to first analyze the motion to disqualify before proceeding to any substantive issues in the case. *See In re Conservatorship of Tate*, No. M2012-01918-COA-10B-CV, 2012 WL 4086159 at *3 (Tenn. Ct. App. Feb. 17, 2012). Here, the trial court seemingly determined that the will at issue was ineffective, thereby obviating the probate and making the motion to recuse moot. Instead, Section 1.02 required the trial court to analyze the motion to disqualify, which in this case would have required a denial of that motion, before determining whether the will was effective. *See Rodgers v. Sallee*, No. E2013-02067-COA-R3-CV, 2015 WL 636740 (Tenn. Ct. App. Feb. 13, 2015). As such, we modify the trial court's order to deny the motion to recuse and vacate its order regarding the validity of the will. We remand for further hearing regarding the validity of the will at issue.

*Id.* at *2. Based on the above language, we determine that *Estate of Abbott* does not support Grandparents' assertions concerning entry of substantive versus administrative orders following a recusal motion. We further determine that allowing the unfettered entry of such "administrative" orders before ruling on a pending motion to recuse violates the plain language of §1.02 and frustrates its purpose.

Here, the trial court entered both of the August 2023 bond orders and the August 2023 order regarding the second contempt petition while the motion to recuse was pending. The trial court did not specify "good cause" for entry of any of these orders during the pendency of the recusal issue. Accordingly, by reason of the mandate contained in §1.02 of Rule 10B and our prior case law, we determine that we must vacate these orders. We remand this matter to the trial court for adjudication of the second contempt petition and further proceedings as necessary. Based on this ruling, we conclude that Father's issues regarding the factual findings contained in the vacated contempt order, the propriety of the contempt ruling and sentence imposed, and the entry of the prior restraint provisions in the vacated bond orders are pretermitted as moot.

## V. Propriety of Denial of Motion to Recuse

Father next posits that the trial court judge erred by denying his recusal motion. We note, however, that the Chancellor, who originally presided over this action through the date of the recusal petition's denial, retired in September 2023. Moreover, we have determined in the prior section of this Opinion that the Chancellor's orders entered while the recusal petition was pending must be vacated. Upon remand, the Chancellor would no longer preside over this matter; instead, it will be heard by Chancellor Hood. Accordingly,

- 14 -

we conclude that Father's issue regarding the Chancellor's recusal is also pretermitted as moot.

## VI.  Attorney's Fee Award

Finally, Father asserts that the trial court's award of attorney's fees to Grandparents should be vacated because there is no statutory authority permitting a party in a grandparent visitation action to recover attorney's fees incurred to prosecute a petition for criminal contempt.  Father argues that because "Tennessee follows the 'American Rule'" concerning attorney's fees, *see Whitelaw v. Brooks*, 138 S.W.3d 890, 893 (Tenn. Ct. App. 2003), "in the absence of a contract, statute or recognized ground of equity" "there is no right to have attorneys' fees paid by an opposing party in civil litigation."  Whether Father is entitled to attorney's fees is a question of law, which we review *de novo* with no presumption of correctness afforded to the trial court's decision.  *See In re Diawn B.*, No. M2017-01159-COA-R3-JV, 2018 WL 3530838, at *6 (Tenn. Ct. App. July 23, 2018).

The trial court awarded attorney's fees to Grandparents pursuant to Tennessee Code Annotated § 36-5-103(c) (West July 1, 2021, to current), which provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

This Court has previously clarified, however, that § 36-5-101(c) does not provide for an award of attorney's fees in a grandparent visitation context.  *See Peirce v. Hope*, No. W2023-00621-COA-R3-CV, 2024 WL 2860911, at *10 (Tenn. Ct. App. June 6, 2024); see also *In re Diawn B.*, 2018 WL 3530838, at *6.  We therefore conclude that the trial court's reliance upon § 36-5-101(c) as justification for its award of attorney's fees was in error.

Grandparents posit that the grandparent visitation statute contains its own fee-shifting provision, thereby justifying an award of attorney's fees in this matter.  Although Tennessee Code Annotated § 36-6-306(g) (West May 2, 2025, to current) does provide that the trial court "may award reasonable attorney's fees and other litigation expenses to either party in an action for grandparent visitation brought under this section," we note that this subsection was not added to the grandparent visitation statute until May 2025.  *See* 2025 Tenn. Pub. Acts 321 (S.B. 540).  In other words, this subsection authorizing an award of fees became effective roughly seven months following the trial court's last order setting the amount of attorney's fees and approximately twenty months following the court's first order approving a fee award.  Accordingly, we conclude that there was no statutory basis

for the trial court's award of attorney's fees to Grandparents, and we reverse the attorney's fee award in its entirety.[1]

## VII.  Conclusion

For the foregoing reasons, we vacate the trial court's August 2023 bond orders and its August 2023 order regarding the second contempt petition, which were entered while the motion to recuse was pending.  We reverse the trial court's orders awarding attorney's fees to Grandparents.  We remand this matter to the trial court for further proceedings consistent with this Opinion.  Costs on appeal are assessed one-half to the appellant, Patrick Malone, and one-half to the appellees, James Williams Rose and Jennie Adams Rose.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

---

[1] Grandparents treat Father's issue regarding attorney's fees as addressing solely the fees related to the second contempt petition.  Upon review, however, we determine that Father's issue relates to the entire fee award, respecting both the first and second contempt petitions, because both were addressed in the trial court's October 25, 2024 order.